Your Honors, may it please the Court. This case began when Mrs. Garcia, our client, with limited English proficiency, attempted to videotape her son, V.P.'s IEP meeting, an Individualized Education Program meeting. Counsel, I'm kind of curious about the exhaustion issue. Okay. It strikes me as a case where, depending on the individual circumstances, it could be that videotaping makes the counselors mad or upset or scared or whatever, and they don't want to allow it. On the other hand, to give the parents fair access, it has to be videotaped, say a deaf woman who needs to see the lips in order to understand what they're saying. There could be other circumstances where it looks like they're just annoying people trying to build a lawsuit. There could be circumstances where audio does the job and the video isn't really needed. And it looks to me like under the statute, let's see, I'm trying to get the jargon to use in the statute. They're supposed to have some kind of complaint resolution session and what they call a due process hearing. And it looks like that got skipped here. And I'm wondering if because of those variations I just described, this might be a case where that's especially useful. You know, Your Honor, I don't believe that it would be in a matter of – there's really no factual dispute here, okay? I think everybody agrees that she – I don't know about that. Okay. I mean, for one thing, they allowed the videotaping at the beginning. So there's a factual dispute about whether there really is a firmly enforced policy. So it would be a waste of time to talk about it. There's also a factual dispute about how much these people could understand without videotaping. Yeah, but, Your Honor, I think when you look to whether the – it's just a simple matter of law. Does the law say that someone can or cannot videotape, and in what circumstances would that occur? Regardless of the circumstances – It doesn't say, does it? Well, Your Honor, regardless of the circumstances that this particular parent, you know, and you mentioned, and I'll just use your words, in a situation of a deaf person, how would you apply that circumstance to this situation? Easy. Yeah. They come into the hearing. Why do you want to videotape? It makes all our people uncomfortable. They watch what they say and how they look. They have to dress special so they don't look bad. Watch their facial expressions. We don't want to videotape. But I can't understand if I can't take the video home and watch it a couple of times because I have to whip read as well as listen to the foreign language with my bad ears. Well, yeah, it could make a difference. But I think we need to steer away from the factual analysis of why – whether she specifically needs it in this case. I think if we look to whether a parent has a right to videotape in a circumstance. I can't see why we would go there, why we would have to decide whether a parent always has the right to videotape. Because they – We haven't found out that – because as I remember, the statute says, the California one, the school has to take any action necessary to make sure the parents can understand, and the federal statute says the school can't have significantly impeded the right to participate. Right. And I think any parent has – I mean, any parent has a right as a matter of law to meaningfully participate in the process. And this parent was simply saying, you know, district, you let me videotape before. Now all of a sudden you're imposing this – you're saying you have a policy that doesn't allow video equipment on campus. So which is it? Look, the school – it looks kind of arbitrary from those facts, and it looks really arbitrary when they call the cops on the parents. I mean, you know – Mark, I don't understand how you get into court without going through the complaint and the resolution session and due process hearing, unless you can show they would be a waste of time, futile. And I don't see how you can show they would be futile where, as I've described, the individual circumstances could affect the judgment. Because we're talking, Your Honor, about a procedural safeguard, a parent's right to meaningfully participate in that process. It's a – again, we'll go back to the simple matter of why they have a right. I'm not videotaping you. I'm not videotaping you right now. Okay. But I'm meaningfully participating because I can understand you, it's useful, and I'm understanding your argument better. I don't need to videotape you. It depends on the circumstances whether you need to. And I could see that, but I think, well, we didn't even get an opportunity to have a hearing on any factual distinction in the district court. And that's one of the reasons why we're here, Your Honor, is to – if we have the opportunity to cross-examine Dr. Fullen after she had raised in her declaration that the district did not, in fact, have a policy, a blanket policy covering or denying videotaping, it was a case-by-case basis, then, you know, I don't necessarily think that we – rather than having the district court take it under submission and make a decision when it was clearly a – you know, was it – you know, we should have taken the allegation as it's true, it was a facial attack. Well, you could have cross-examined them in the due process as well. I mean, if figuring out what the story is is important, cross-examination is important, you could have done that during due process, right? Well, Your Honor, why should we – our clients – I asked you a question. Okay. And you chose not to answer it. Now, was there a reason you chose not to answer my question? No, Your Honor. Your question – can you repeat your question, please? No. Okay. I'm going to make you remember it. Okay, so – Because you really need to pay attention when you ask a question. Okay. My understanding – You could have cross-examined at the due process here, yes or no? It would – that is – Yes or no? There's an opportunity if she were a witness – if Dr. Fullen were a witness, there would be an opportunity to cross-examine, yes. You could call her as a witness, yes? Most likely, Your Honor, yes. Okay. And you could examine her, yes? Most likely. You could examine her as an adverse witness, right? I'm sorry? You could examine her as an adverse witness. That's true. Essentially, it's cross-examination. Yes. Leading questions. So why is it taking you, you know, a better part of two minutes or three minutes to answer my question? You could have cross-examined her at the hearing, yes or no? She could have been cross-examined at a due process hearing, Your Honor, yes. However, we brought our complaint after exhausting – So how can you stand there and say it's futile to have had a due process hearing and then in answer to Judge Pleinfeld said we should have been allowed to cross-examine her in the district court? It seems to me you have just taken out your .357 Magnum and shot yourself right through the foot, right? Standing right there. Because, Your Honor, we've already exhausted administrative remedies. So they've already – they shouldn't have to – Well, no, you have not exhausted administrative remedies. Administrative remedies call for going to due process. There's a narrow exception where it would be futile. But you have just admitted standing there that it would not have been futile because you would have gotten something out of cross-examining. And this is something you could have done at the due process had you chosen to proceed. It seems to me you've just given away your case. With respect, Your Honor, I disagree. Explain to me how you haven't given away your case. Because my client has filed a due – has filed a compliance complaint through the alternative process, which very clearly by this Court was set forth in Lutsch. There's two processes. We've got the complaint resolution process and we've got the due process proceedings. No, no, no. The statute requires you go to due process. That's what the statute requires. Sometimes you can get relief from the CDE as well, but that is not a substitute for a due process hearing. The only exception, the only narrow exception is where it would be totally futile, would be totally futile. And once you say cross-examination matters, as you just said, stand there and said cross-examination matters, you can't say it's futile. However, Your Honor, we cannot get declaratory relief from OAH and they do not have authority to implement their own orders. Well, that's why you go to district court. That's why after you win or lose before OAH, you go to district court and get an enforcement. And that's how the system works. I mean, isn't that sort of the end of the case for you? I didn't understand that last point. Isn't that the end of the case for you? Let me ask you, let me get it from a different perspective. Let's say you go to the state, the D.C., the Department of Education, and you don't get this relief, right? And we don't get it. You don't get the relief you want. They deny the relief, right? Okay. And let's say you then go to due process. Is the hearing officer precluded as a matter of discretion from granting you the relief, even though the Department of Education says it's not required? If you've already exhausted your remedies and gotten decision, you know. Just answer my question. I don't want you to rephrase my question. Okay. I don't want you to recharacterize my question. I would like you to answer my question. You can say yes, you can say no, or I don't know. Okay? Any of those are acceptable answers, and you can follow up after a yes or a no, or I don't know, you can follow up and explain. But you've got to start with one of those. Do you remember the question? Yes, I remember the question. Okay. Yes or no? My understanding of your question, Your Honor, just so I can clarify. If you don't remember the question, I'll repeat it for you. Okay. Please repeat it. Okay. They go to the State and are denied relief. The State says, the Department of Education says, you are not entitled to this. Okay? You then go to due process. Is the hearing officer precluded by the ruling of the Department of Education from granting this relief as a matter of discretion? Not as a matter of right. You're not entitled to it. You don't have a right to it. But is the hearing officer authorized to say, even though you're not entitled to it as a matter of right, I exercise discretion. I say in this case, this must be allowed. Does the hearing officer have that authority? Not if there's been a final decision by the California Department of Education through the complaints resolution process. There's already been a decision rendered. Really? You cannot have inconsistent decisions. Why are they inconsistent? The State says you're not entitled to it as a matter of law. The hearing officer says you're not entitled to it as a matter of law. But as a matter of discretion on the facts of this case, I choose to order it. Is that ñ is there some authority you have that says that the hearing officer can't do that? Because you cannot have ñ Is there some authority you have that says that the hearing officer cannot do that? If you went to the CDE first and you got a decision, then you went to due process, in the circumstance where you've got the CDE investing in a complaint and then they take over, OAH takes over and makes a due process decision, you cannot have concurrent jurisdiction over the same issue. In fact, when there's a CDE complaint pending, if someone, either party, files a due process complaint on the same issue, the CDE suspends their investigation. No, I fully understand that. Okay. But you have not come to grips with my question. They go to CDE. The CDE says, look, we look at the question of whether you're entitled to it as a matter of right. And we say, no, you're not entitled to it as a matter of right. You then go to due process, and the due process officer says, look, I understand. You're not ñ you know, this is not a matter of right. But I have authority, I have discretion to grant this relief in the circumstances of this case, and I will grant you this relief as a matter of discretion. Not as a matter of right, as a matter of discretion. My question, once again, and this is the last time I'm going to ask it, is does the hearing officer, is there anything that precludes the hearing officer from exercising its discretion to grant that relief? Even though the parents are not entitled to it as a matter of right. Are you looking for a code section or a statute or a case, Your Honor? I'm looking for an answer and a piece of authority to support it. A case would be good. A statute would be better. A regulation would be great. Right. You know, just something. If we go through the complaints resolution process and have a decision from them, I don't see the reason why we relied on the Lutch case. From them being the ñ The CDE, through the complaints resolution process, at least in this State, if we rely on Lutch, it being a proceeding, there's ñ and Lutch deciding ñ in Lutchís case, the court decided that it would allow the parents to, you know, collect attorneyís fees for being the prevailing party through this administrative process. That would have been a final decision. A judgment essentially on the merits in order to grant them prevailing party status. So that's what we're analogizing here. It's no different than that circumstance. No, no, no. I understand that once the CDE grants relief and you said you have rights, there's no point in going to try to get the same relief from the office, from OIH because you've already gotten this relief. You don't want more relief. That's it. Then you come here or the district court and enforce it. But ours is the reverse situation. You don't get the relief you want from the CDE. Is there anything that precludes, is there any authority that says that the hearing officer can't grant it anyway, even though you don't have a right to it? But they say, well, you know, we ñ they do do equity to some extent. And they say as a matter of equity, because as Judge Kleinfeld has suggested, because in this case we have a deaf parent, you know, you know, there's circumstances that make this equitable to do. They can do that. You know they can do that, that the hearing office can do that. If we're challenging a policy, my concern, Your Honor, is that due process hearing office, that OIH is not, doesn't have jurisdiction to issue declaratory relief. And if they did, they don't even have power to enforce their own orders. I don't know if that's right. I looked at that California letter from the California Department of Education. What it says is that it quotes the regulation, or rather the statute, saying the parent has the right to record electronically on an audio tape recorder. And then they say that the district is not required to allow videotaping. But I don't see where it says in there that a district may not permit videotaping. It just says that it's not required to permit it. Have I missed ñ I'm looking at 221. If there's another page where the department says that videotaping is not permitted, that would help me if I could see that page. But all I got out of this was what I just read you. But they're making a decision, Your Honor, on what the law says. They've rendered a determination which my client relied upon in deciding, do I have a right to do this? This is the page. That is the final decision. There are a lot of things I don't have a right to do, but people let me do them. Right. And the district chose to take ñ Because I get what I want, even though I don't have a right. The district chose to take, you know, an inconsistent position. And so we were seeking clarification initially through the CRP process, because the concern is that ñ and again, pointing back to Lesch. And the concern is that why should my clients have to go through an extremely expensive due process proceeding on a question of law? Does the law say you can or you can't? Is it that they're not so much interested in having permission to videotape as they are in establishing a right to videotape? We're establishing whether the law says that you can't videotape, because there's nothing specifically that says you can't. I mean, you know, are you ñ Look, I'm kind of sympathetic to you. I don't understand why it's so important to these people not to do videotapes. I understand a little, I guess, because we don't like it much ourselves. But I'm still a little surprised. Nevertheless, I don't see anything but you don't have a right to videotape. I don't have a constitutional right to browse around on the Internet, I don't suppose. Well, maybe I do under the First Amendment. But what stops me? When we talk about right, Your Honor, if you don't mind, I'm just ñ can I respond? I'm trying to find out if you're trying to establish a legal right or if you're just trying to get permission for these parents to videotape. We're right based on the provision of Federal law that discusses meaningful participation under, you know, 1450. You're saying it's not meaningful as a matter of law unless it's videotaped. If a parent requires videotaping to meaningfully participate, then it's a bit, you know, it can be a bit subjective, you know, in some circumstances. Okay, what is the legal basis? I guess the reason I'm somewhat sympathetic is I thought videotapes in some cases, like maybe the Rodney King case, useful. Videotapes of police interrogations, that can be useful. Videotapes in drunk driving cases. I once went over there and watched my client, obviously so drunk he was silly. Videotape was real useful in cutting through lies. So I can see value to it. I do not see a legal basis for saying there's a right to it. And I think what you're telling me is you want to establish a right to it. And I don't understand the foundation. Well, I'd like to establish in a circumstance where the parent says, District, we cannot meaningfully participate for whatever reason, whether it's because parents are deaf, okay, and they need to be able to read lips. And it's a very complex. These parents? Well, no, I'm just saying an example. I'm just bringing up your example of a deaf parent. So in that circumstance, not these parents, but in that circumstance, you know, that would be a very valuable thing. You know, the parents are saying, I don't, I cannot participate and understand and really grasp what the school is doing. All I get out of the law, when I look at the law, is they have a right to a hearing where their ability to participate is not significantly impeded, not that they have a right to videotape. Well, right, Your Honor, but it may not necessarily be, you know, just videotaping, just flexibility to allow them to meaningfully participate. Why isn't it appropriate to determine that on a case-by-case basis instead of just having, I mean, they don't, there is no broad policy, is there, in the school district? Well, that's what we're, I mean, our position is there is. They made it very clear that they don't allow video equipment on campus. And that's what they're telling us is. Where in the record is there articulation of a broad policy that applies across the board? In this case, they said you can't bring video on. But is there a written policy or something? There is. We're not aware of a written policy. If, you know, back to if we would have had an opportunity to hold an evidentiary hearing, we could discuss with Dr. Follinger. You mean like before the OIH? No, Your Honor, before the district court. Why the district court? Because, as I mentioned before, Your Honor, my clients have already fully exhausted their administrative remedies through the CRP. But the law doesn't agree with you. The case law does not agree with your position that the CRP is exhaustion for purposes of the IDEA. Why not, Your Honor? Because Lush was very clear. Because the law doesn't care. The case law says so. But this Court talked about it in Christopher S. and Lush. That's when you have a broad policy. That's when you have an articulated, formalized policy. In those cases, for instance, where it said the lunch time would count as instructional time. I mean, that was a policy that applied across the board regardless of individual circumstances. That's not what we have here. Well, but that's what they told us because they said regardless, you cannot bring video equipment. You cannot. Apparently not. Well, we do not permit. Excuse me, Your Honor. We do not permit. And I certainly can look through the record and find the exact reference to a letter that we received. But we received several letters from them making it abundantly clear after our clients had already videotaped IEPs that suddenly, you know. But do you see that that's an individual determination? That's not a broad policy? Do you see the difference? But, Your Honor, when they say that this is our policy, we do not permit video equipment on campus. Where in the record does it say this is our policy? Well, we do not permit. I can find it for you, Your Honor. Well, you should know that. Okay. If that's a linchpin of your argument, you should have that at your fingertips. Your Honor, it's not the linchpin of my argument. The linchpin of my argument is that this client, excuse me, this parent has already exhausted the remedies available to her through the complaints resolution process. She's already gone through a compliance complaint and Lutch made it. She had the resolution session and the hearing? Abundantly clear. Complaints resolution process, a compliance complaint. Did she have the complaint, the resolution session, and the due process hearing? She did not have a due process hearing, Your Honor. Did she ask for one? She did not ask for a due process hearing because it was unnecessary. I didn't ask you the because. But when you say unnecessary because she thought she wouldn't win. No, Your Honor. I didn't say that. Okay. When you say because it was unnecessary. Because she had already exhausted administrative remedies, Your Honor. She had already gone through the CRP process. An alternative process, again, pointing back to Lutch and Christopher S., we're looking at Lutch specifically. They're serial. You don't have to do both. You do one or you do the other. You can still get, you know, relief on a procedural safeguard violation allegation from the CRP process. Okay, Your Honor. That's time. Thank you, Your Honors. Good morning, Your Honors. My name is Charles Weatherly, and I, along with Jennifer Thain, represent Los Alamitos, and Gabriel Rivas represents the State Department of Education. Counsel, I don't understand calling the cops on these people. Parents and school bureaucrats have some disagreement about their kids' individualized educational plan, and if the parents are making the lives of the school bureaucrats unpleasant, they get busted. That seems like that would impede their right to participate in the hearing. They've got to be so careful that they don't wind up in jail. Well, Your Honor, and I have to be careful to not go beyond the record in responding to your question because I was at that meeting, and it is clearly factually disputed as to what occurred. And taking the allegation to the complaint is true, which for purposes of our argument they do, the police were called by our client. And they were called because notwithstanding being told, and this is in the record, that you could not, you could no longer bring the video equipment into the IEP meeting room. The police were not called to arrest the family. The police actually were called in case something happened within the meeting. And apparently, according to the pleadings, there was a dispute. Sir? That's pretty intimidating. I mean, we get cases every day. We tell a lawyer time's up and he keeps talking, or we ask a question and we don't get an answer. We don't press the distress button and get all marshals running in here with guns. And I hope you don't need to do that with me, Your Honor. It's pretty intimidating. I mean, we don't do it because it would be outrageous. Well, Your Honor, I think our position has been in the record that the parents were, in fact, invited to go forward with the IEP meeting without videotaping. And, Your Honor. It's so easy to deal with. They say, no, I'm going to videotape. I have a right. I have a right to videotape. It's our policy not to let you videotape. Well, I have a right. It's our policy. And you just sit there quietly, having no meeting, until they turn off the machine and put it in the bag. Your Honor, in retrospect, and I think the record shows, I fortunately did not call the police or call the sheriff. The intention was to have someone there in case it was adversarial. And I think it is very clear from the excerpts of the record, Your Honor, the minutes of the September 7th and September 19th meetings that it had been very, very acrimonious. And my client had a great deal of concern. You get acrimony all the time. Somebody tries to return a sweater at Sam's, and they say, well, it looks like I don't think we'll take it as a return. But your policy is you're supposed to take returns. And they start raising their voices, get mad. They don't call the cops. They just eventually glare at each other and it goes one way or the other. Your Honor, I'm... There's this law that says you can't significantly impede their right to participate. And if you have to mind your P's and Q's and dot your I's and cross your T's and be careful of talking a sweet, soft voice all the time so that no scaredy cat feels intimidated, then your right to participate is impeded. And, Your Honor, and I don't disagree that that certainly could be an end result. And I don't disagree that under the best case scenario, that may have, may not have been the best thing to have occurred. But the bottom line is I think both you, Judge Kleinfeld, and Judge Peralta asked, was there a remedy for this? And that remedy was the due process hearing. Because if calling the police had impeded on meaningful participation in the IEP process, that is something that a hearing officer clearly had jurisdiction to consider and clearly had jurisdiction to rule upon. You know, in my former life I was an advisor to school board trustees and we called the police a lot. Because parents get really, really agitated when it comes to their children. And sometimes the police did have to be called to bring order to the process. So that doesn't surprise me as much as it may surprise Judge Kleinfeld. Because it happened a lot when I was the legal advisor to the school board. It's happened more than I would like to say that it has happened. But what happens? I mean, I had issues with the school like, oh, my kid getting in trouble for telling the other kids Santa Claus wasn't real. But they didn't send him to jail. Why would you tell lies like that? Parents get very agitated when it comes to their children sometimes. And it's almost like, you know, when you have a divorce. I mean, people's feelings run very high. And parents understandably are protecting their, you know, what they see as their children's best interest. And they see these bureaucrats as impeding their child's right to a free, appropriate public education. And sometimes it gets out of control. Do they get violent? Or do they get sarcastic? They get violent and threaten to do harm, physical harm to people. I've seen that happen. As have I, Your Honor. I have seen some very unfortunate, very threatening. I have had, this has nothing to do with this case. I've had my own life threatened on two occasions, which has necessitated having either security officers of the school or the sheriff or the police present so that if something occurs, there is someone present. We even on one occasion had to hold a meeting in the courthouse. They threaten to kill people for not getting their kid enough hours of individualized counseling or something? Yes, sir. Never would have thought of it. Well, it's parents that feel very fervently about the needs of their special needs children. I can be very emotional about that, Your Honor. And sometimes, as Judge Rawlinson said, sometimes these things happen. And it's unfortunate. And you're in a real dilemma is how you respond to that. I mean, how do you keep that emotion down? How do you keep it? You're on a school ground, Your Honor, which was clear what happened in this case. And right outside the door, doors on either side, you have children going up and down the sidewalk and playing. And what if the district is unsure of what might happen? I mean, you have an obligation to the safety of the other children. It's not just the IEP team members. So you have some obligation there as well. It is very sad, Your Honor. You can probably tell by looking at me. I have been at this for some time, in fact, since 1978. And I have seen this much more than I would like to say. Does the record reflect why there was a change in policy as far as videotaping? Well, I'm going to be very careful to answer your question, Your Honor. You could answer it yes. Well, no, because. Either the record has something or it doesn't. Well, it was the use of the word policy in the question, Your Honor, that gave me pause. Because we say there was not a lot. I was going to say, does that assume a fact not in evidence? Yes, Your Honor, but I wanted to be careful about saying that. They changed what they were going to do with that parent in that IEP meeting with that child based on what had occurred in prior IEP meetings. So, yes, they did change. The question is, why did they change? And they changed because of the high level of antagonism and acrimony that had existed in prior meetings. And when you write. And what does that have to do with videotaping? Well, it really has nothing to do. What if I invite the videotaping and keep them in line? People are less likely to misbehave if they're afraid a jury is going to see it on TV. Well, it also, Your Honor, as you observed, it also can become a technique that can be used for cross-examining personnel during the course of what is supposed to be under the law a non-adversarial process where you're looking at the needs of the child and developing an appropriate program. And it was moving from my client's perspective, it was clearly moving in that direction. And our client perceived it as more of a litigation strategy, that it was meaningful participation of the parent in the process. And I wanted to answer Judge Kaczynski's question posed to Mr. Adams. What would happen after a ruling by the CDE? And that is specifically referenced in the commentary to the 06 regulations. And that is either party dissatisfied with the results of a CDE investigation may bring a due process hearing. And as the Ninth Circuit observed in Porter, going to federal court is not the last step in the CDE investigation process. So a due process hearing remains the vehicle by which the district court has conferred jurisdiction to hear the matter. Counsel, was there a policy regarding videotaping? No, Your Honor. There's not a fact alleged other than one conclusory statement in paragraph 55 of the first amended complaint where they aver a blanket policy. There are no facts to support it. And we submit you can't take that conclusory allegation. It's true. But there was no policy. If there were a policy, they had violated it in the previous two meetings. Now, going to the CDE did establish that as a matter of law, parents were not entitled to videotape. For example, let's say the district had said no audio taping, right? Yes, sir. They would have gone to CDE, and CDE would have looked at the statute. The statute clearly says audio taping is permitted. The California statute does, Your Honor. Right. I mean, it says that. Yes, sir. And the CDE would say you don't have to have an excuse. You don't have to have a reason. You don't have to show you're hearing impaired or anything else. The CDE could have just said, look, all parents are entitled to audio tape. Yes, sir. And at that point, they wouldn't need to go to a due process hearing to get that enforced. Let's say the school district said, okay, we have this ruling from the CDE, but we're not going to let you do it anyway. I think Porter says you can then go to the district court. You can skip the hearing office, right? Well, Your Honor, not exactly. Porter dealt with a due process hearing decision in favor of the family that was never implemented. And the question was... And they go to CDE, and CDE says, yes, that has to be enforced, right? Well, actually, the question in Porter was did you have to go to CDE to get CDE to enforce? Okay. Or could you come into federal court to enforce the order? Okay, so it was really the flip situation. Yes, sir. Absolutely. So let's deal with my hypothetical. Let's say the issue is now audio taping. They go to CDE. CDE looks at the statute, reads the statute. The statute clearly says audio taping is required. And it orders the school district to allow video audio taping, right? Yes, sir. And the school district says no. Now, CDE can't force the school to do it. They can cut off funds. I mean, there are all sorts of unpleasant things that they could do to bring pressure on the school district. But there are, you know, very heavy things that implicate rights of many other students. I mean, you know, it's something that the CDE does not likely do. And CDE might just say, look, they are supposed to do this. We have ordered it done. But all the levers we have are just too heavy to do anything about. And in that case, the parent can go to district court and get the CDE order enforced without having to go through due process. Isn't that right? Am I understanding this correctly? I'm not absolutely. At that point, there's no facts to be developed. There's simply an order of the CDE that the school district chooses not to follow. And I'm clearly not attempting to be evasive, Your Honor. I would not want to be on the side of that case with a statute that says audio taping is allowed. And there's a complaint investigation result from CDE that said you should allow audio taping. You should allow audio taping. Well, I understand. If you were the lawyer, the school district would do what it is. But let's say they have a different lawyer who's less reasonable than you are. And, you know, I'm just trying to understand how the system works. And for whatever reason, they say, no, we're not going to do it. CDE says it. The statute looks like it says it. We're not going to allow audio taping. At that point, the parents can go to district court without going through due process. Are we disagreeing on that? If the policy about audio taping within the district. There's no policy. I'm not sure I get this. I just got lost in the hypo. I'm thinking the way it would happen in real life is you get some school principal who says no audio taping. And the parent shows him this law and says, look, I have a right to audio tape. Just the way people sometimes tell police correctly. I have a right to this or that. And the principal says, you can't audio tape. And the parents say, why don't you call a lawyer and have him check this out. And the principal says, I don't need no stinking lawyers. That happens too, right? That kind of thing happens. He says, I don't want to hear it. You can't audio tape. It seems to me that in that case, when you have your initial, I can't remember, I can never remember these school jargon terms, but when you have your initial talk to see if you can work it out, you fail. But then when you have the hearing officer of the state, he's thinking, this principal is out in left field here. And he just orders the audio taping. Are you saying that when the principal says, I'm not going to follow the law and allow audio taping, that that's policy and then you don't exhaust? No, that was thought. I was being careful while responding. I was responding, no, I'm not saying that's a policy. That is an individual principal. That's how I was trying to respond to the question. If you have an individual principal making a decision with one parent and one child that regardless of what you're showing me, I'm not going to allow audio taping, that a policy does not make. And in my view, you would still need to go through the 1415 I-2A due process procedures in order to get into federal court. Now, and your Honor, I'll ask the question about this of a colleague. The complaint resolution process that's required by IDEA since the 04 amendments, that's the point that hopefully that reasonable attorney and reasonable special ed director will have told that principal no and will come to that meeting and say, we will reconvene the meeting and you will be allowed to audio tape because that is California law. That's the way the process should work. That's what's supposed to happen. Yes, sir. I guess I don't follow. If you have an order from the CDE that says you must allow audio taping and the principal says, I don't care, I'm going to allow it anyway. I still don't understand what the point is in going to a hearing office. What can the hearing office do more than the CDE has already done? Well, he may not be able, he or she may not be able to do more, but the hearing officer can make a determination based on the development of a factual record, which does not occur in the CDE process. Make a determination on a factual record as to whether or not that decision denied the parent meaningful participation in the development of that child's IEP. Because what if, as your honors I believe have recognized in reading from the letter that addresses this audio taping, video taping issue, you've got California law that says you must allow audio taping. The general law as it has evolved has been there's no right to audio tape or video tape. The right is to have meaningful participation in the IEP process. And that is something that is typically determined by a hearing officer. And it's our position that going to CDE and going through the CRP process does not allow you to go directly into federal court, unless you are meeting one of the exceptions to the Exhauster Doctrine. One of them is futility. Well, yeah, and your honors. One of them is futility, and the CDE says you've got to allow audio taping, and the school district says no. What's the point of going to get a hearing officer to say, hey, you've got to allow video taping, I mean audio taping. Thank you. You already have an order from the superior body saying you've got to do it. The hearing officer has no enforcement powers any more than the CDE. No, the hearing officer has much more authority in terms of. . . No, they don't. Let's say the school district gets a hearing officer decision, and the school district says, no, we're not going to do it. He's got to go to district court. There's no enforcement until he goes to district court or superior court. Well, the provision I cited earlier, your honor, and I can't imagine this occurring, frankly, under your hypothetical, because California law. . . But then the hearing officer tells the ignorant principal what the law is, and he says, oh, I didn't know that. I wasn't listening to the parents' court, and then follows it. Probably daily. Right, but under my hypothetical, you have a decision, you have an order by the Department of Education, which is a higher authority. Is it an order? That was, you know, it's a finding. It's a finding by CDE, which I think it would be imprudent to do. No, I'm sorry. I think it's an order. What makes you say it's a finding? They are directing them. In fact, if they don't follow that, they are authorized to cut off funding. True or false? That's correct, your honor. I don't know how you can make this not true. Or true. Yeah, I mean, it is true. So saying it's not an order is just not true, not right. What the Department of Education is saying is you do this, or you might lose your funding. If that's not an order, I don't know what an order is. I am not going to quibble with the order finding part. But you did. You're taking back your answer to Judge Robinson? I take back my quibble, your honor. If I may. But it would be imprudent to do so, but if for some reason they were dissatisfied. But they do it all the time. School districts defy orders of the Department of Education all the time. You know that. You don't have to tell us about this case or this client, but it happens all the time. I wouldn't say happens all the time, your honor. Once in a while? Yes, your honor. I think we're now back in the quibbling business. I guess I'm just a good quibbler, your honor. But the fact is, what I was saying is it would be, in my view, imprudent, but the district taking that finding, that under the law you should have allowed videotaping, could request a due process hearing. Because our bottom line position is that the CRP investigatory process does not confer, as it cannot. That doesn't help you here, because your client could have asked for a due process hearing as well here, and chose not to. You could have. You had a dispute with the parents. They can bring a due process hearing. You could have brought a due process hearing. So the fact that there's no due process hearing is a blame equally shared by both sides in this case. You're not going to quibble with me about that? I'm not, your honor. Because I know what I'm saying is right. Well, but the IEP process was concluded in April, your honor. And was it a successful IEP? Now I'm going outside the record. Well, is in the record a successful IEP or was it not? I think it was a good IEP. Yes, I think it was a good IEP. It was developed in April. I see. So you think you had a successful IEP? Yes, sir. And there was no reason at that point to request a hearing. Okay. Fair enough. The only question was should we have allowed videotaping for what ultimately became an IEP that we thought was appropriate. Okay. I had assumed that the IEP process broke down at that point, but I guess I – okay. Counsel, can I call your attention to page 221 of the record? This is the response from – is this the response from the Complaint Resolution Procedure Office? Do you have that? Well, I don't have it. I just wanted to ask you if this is typical of what comes down as a result of a complaint resolution. I have it now, your honor. I'm sorry. 221. Is it the big book? It's in the excerpt of the record, yes. Is that typically – do you consider that an order? Ma'am, I'm caught switched in between now. Because I'm looking at this as opposed to what you get from a hearing officer when you have a due process hearing. And I know that you don't want to get at cross purposes with any of us. But, you know, I just – there's a real contrast between what you get from a complaint resolution process and what you get from a hearing officer. Absolutely, your honor. But the problem with this letter is that it says – it's written to the parent saying you have no rights. A letter that comes out the other way that says the parent is correct and your school district needs to modify your policies looks very different. They didn't look different? No, sir. The letter would look – they just would have a different conclusion. But the letter would look the same format. What would the conclusion be? Wouldn't it be something like the school district shall take the following steps? It would – the letter would be to the family saying that the family was entitled under California law to have the IEP meeting audiotaped. Wouldn't there be a letter to the – if it was an order, wouldn't it be a letter addressing the principal as well saying it would be ordered to allow videotaping? No, sir. There would be a copy that would then go to the district. And there would be follow-up with the district that you are in noncompliance. And it would be another document that would go to the district directing the district. Oh, that would be the order. I'm wondering – It's going to be the order. We'll answer the judge's question. Yes, this letter would look the same, but there would be a kicker. There would be a kicker that would follow it. There would be a follow-up, Your Honor. There would be. That would be a letter to the principal saying let him audiotape the meeting? It would be to the school, probably the superintendent of the school. Let there be light. Let there be light, yes. Okay, I think we've exhausted time. Thank you, Your Honor. Would you like a minute for a bottle? You don't have to take it. Counsel, while you're approaching the podium, if you would tell us if this case were to go to federal court based on the complaint resolution procedure, what would the record be? The record would be that – Could you come to the podium? Okay. I'm looking for your record. The record would be, Your Honor, that Mrs. Pedroza, the VP's mother, would require the videotaping in order to meaningfully participate. What I wanted to clarify for Your Honors is that it doesn't just have to be videotaping to meaningfully participate. It could be a variety of things. In this circumstance, it was videotaping. And I think the procedural right is meaningful participation. So I think that in this circumstance, we're just trying to figure out is meaningful participation videotaping? Could you just elaborate a little bit on the question I asked you? If you went to federal court after the complaint resolution process is completed, what documents would constitute the record? What documents would constitute the record? Well, the documents we submitted to Your Honors as part of this record would constitute the record. And if I could also answer a question that you posed before. You were talking about the policy, Your Honor, that you were looking for. You mentioned as, in your words, was a linchpin. And I was asking if I could show you which page that was. And I do have that page. Okay. What page is it? And I'm referencing, when I talk about letters, one of the letters. What page number? Excuse me. 318, Your Honors. That's one of the letters we received from the district. In addition to page 320 from Mr. Weatherly, the district's counsel, clarifying the district's policy. And when I say policy, this is the policy that was developed, you know, we were made aware of after the videotaping had taken place in prior IEPs.  And I'm pointing to what we're referencing. It obviously, you know, if they had, you know, sometimes policies don't have to be formalist as adopted by a school board. Sometimes they're informal. Sometimes, as you discussed with Mr. Weatherly, they could be a principal's own policy. They could be a school policy. And this is essentially. Well, page 320 specifically disavows having a policy. 318, Your Honor. Okay. I understand, but you pointed to 322 as well. Okay. I apologize, Your Honor. I'm pointing to 318. Their position is it's not a policy, but there's, you know, his letter is following up. I don't understand your interpretation of the letter. It looks to me like they're saying we don't have to, so we're not going to on the videotaping. They're not saying we're not allowed to. Yeah, but that's their policy, Your Honor. We're talking about their. We don't have to, so we're not going to. 322 is different from we're not allowed to. For example, a store that accepts returns but doesn't have to accept returns and has a sign-up saying returns at our discretion doesn't have to, and sometimes it accepts returns, sometimes it refuses. Okay. Your Honor, this is the policy that they had conveyed to us that they were enforcing, saying we have a policy. They've told us verbally and in writing that this is based upon, this is what they're interpreting as based upon California law, because California law says audio recording. I'm sure you looked it up. Yes, I'm familiar with it. And I think that's the, isn't that the law that says parents can audio tape? That's correct. But, again, let's go back to the meaningful. It doesn't say parents can't videotape. I understand that it doesn't say that, Your Honor, but let's go back to the meaningful participation point. In this case, the position, our client needed the videotaping to meaningfully participate. That's why we brought this question to the CDE through the CRP process. Well, it seems to me that every time you say in this case, our client needed this to meaningfully participate, you're saying I wish I had a hearing officer who could hear my reasons and make findings. So it seems to me you're just shooting yourself in the foot. Your Honor, I disagree, because if the district says this is their policy, they're saying they're going to, the way we interpreted this policy. Let's say that's, in fact, what they're saying. It's not clear that's what they're saying, but let's, in fact, see what they're saying. You're saying, well, you may have this policy, but this policy interferes with my right, my, the parent's right, our right to meaningfully participate. So you've got a conflict between the policy and the statute. And the answer to that would be, well, we don't really believe that this would interfere meaningfully with your ability to participate. So you go through due process. You have a hearing officer who takes evidence as to why this particular set of parents needs this to, you know, meaningfully participate. This is exactly why you have a hearing process. Well, if the facts are not in dispute and the district's saying we're not going to allow videotaping, we're saying we'd like to videotape, the point is where it says you can't do it, you know, it's a matter of law. That's why. But you hinted at more facts. You said, well, in this case, they needed to be able to show it to somebody because of the situation. That's, yes, every parent may have an individual need, but it's not necessarily going to be the case when you're asking for something like the right to meaningfully participate by video recording. This parent required this to participate, just like, you know, we're saying because the law doesn't say that you can't do it, you know, why wouldn't you be able to do it? It should be really clear cut. There's no dispute of facts. That's why we went through CRP. That's why we got this decision, which we, you know, which, as you mentioned, you know, if it were the reverse, would it be in order? Yes, it would be in order. It would say you have to, you know, in your hypothetical, audio record. In this case, we were asking for videotaping. There are reasons not to allow it. A reason on the – there are all sorts of reasons. Videotaping, well, our bar association once used it to intimidate a senator as surprising, videotaping him when he showed up to disagree with us on something. It can be intimidating. I think a lot of police don't like it because they sometimes use cuss words, and they're afraid when the jury hears them using cuss words, a couple of the jurors will be inclined against them on the case. There are reasons why people don't like it. Some people are afraid they're ugly or they have a habit of picking their nose, and it can just interfere with their own participation, the school official's participation. Your Honor, I can't speak from being present as Mr. Weatherly was at the IEP. Unfortunately, I was not there in person, but what I can say, you know, my business partner, my law partner was there, but what I can say is that this was not used to intimidate anybody. It was used to facilitate my client's participation in the IEP process. Well, that's your claim, and you could explain that if you had gone to the hearing office. You could explain why this would have facilitated it. And, you know, that's why you have a hearing process. The statute gives you audio taping. You want more than that, and you say, well, no, I need more in order to have meaningful participation. That's the kind of thing you go to the hearing office and explain, and you chose not to do that. But if it's just a clear-cut issue of law, the law doesn't say you can't, and the law clearly says it doesn't say you can't, it just says audio record. Why would we have to go to, I mean, my question we're asking is why would we have to go to due process to have a decision we've already presented it to the CDE in the form of a CRP? To explain why, in your case, videotaping is necessary for meaningful participation. But that's assuming that it would be a case-by-case basis. I mean, it doesn't always have to be that way. I mean, you know, every parent should have the right to meaningful participate, regardless of whether they're, as Justice Kleinfeld. Not for every parent will videotaping be necessary for meaningful participation. That's the difference. You say, in your case, you needed videotaping for meaningful participation. Other parents may not. Right, but every parent has a right to meaningful participate. So what we're saying is that if videotaping allows, I mean, it could be a case-by-case basis. Back to my first question. I feel like I've meaningfully participated with you in our conversation. I've learned a lot from you. It's most helpful to me in understanding the case, and I haven't videotaped you. And if, unbeknownst to me, some clerk had stuck a secret videotape recorder in the wall. Go check this. I still wouldn't want to. Your Honor, let me ask you. I wouldn't need to, because I've already meaningfully participated. I don't see what I would need it for. It seems like it would only be a special circumstance where somebody would need videotaping. Not necessarily, because even somebody without a language, you know, second language learning issue or a hearing impairment issue, people are visual learners, they're auditory learners. A lot of people certainly can understand the process better when you've heard it, seen it. I mean, you have to understand that these parents are very emotional through this process. When they go through this IEP, it's about their child. And they tune a lot of things out because they're so focused on what's going to happen at the end of the day. Where are we going to end up? And, you know, sometimes a lot of what they hear kind of falls through the cracks. And so, and that's with every parent. Why wouldn't audiotaping resolve that issue? I think audiotaping helps, Your Honor, but I think videotaping really allows every parent, not just Mrs. Pedrosa, but every parent to truly, at least if they assert, you know, if it became a right or became an option, excuse me, they assert that option, it would allow them to review that tape just like they would review an audiotape and really come to it. And get 17,000 of their closest friends to review it by putting it on YouTube. Well. I mean, it sounds like you need to get the disabled children's parents together that all lobby the legislature for a law that entitles you to videotape, if that's what you think. By the way, we have three cameras. There's one there, there's one there, there's one there. So chances are we are being videotaped. Okay. So you recognize, Your Honor, how useful videotaping can be. We use it in depositions nowadays. I mean, we use it all, you know, it's used in a variety of arenas. We talked about police officers using it. It's a whole different deposition when you videotape it. What's that? It could be. And it creates, it does create a good record. But that's not why this parent was, she's, I mean, except for the fact. You know, I think we've heard everything you've had to say about three times already. I think your time is way up. Okay. Thank you, Your Honor. Okay. I'm sorry you were standing there. All right. We'll next hear argument M.
judges: Kozinski, Kleinfeld, Rawlinson